1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

10

11

12

13

14

15

16

17

STEVEN E. BARRON, an individual; MARC W. HILLESTAD and CHRISTINE L. HILLESTAD, husband and wife; FRANK E. SCHOEN, an individual; and RAYMOND OWENS and TAMMY OWENS, husband and wife,

                    Plaintiffs,

        v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

                    Defendant.

No. 3:16-cv-05576-BHS

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION FOR PROTECTIVE ORDER

NOTE ON MOTION CALENDAR: JANUARY 13, 2017

18

## I.    INTRODUCTION

19

20

21

22

Plaintiffs Steve E. Barron, Marc W. Hillestad, Christine L. Hillestad, Frank Schoen, Raymond Owens, and Tammy Owens respectfully request that the Court deny the motion for a protective order filed by defendant American Family Mutual Insurance Company.

23

24

25

26

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## II.    BACKGROUND

### A.    Nature of the Case

At issue are proposed class claims that challenge American Family's illegal depreciation practices.[1] The insurance policies define "actual cash value" as replacement cost minus depreciation for physical deterioration or obsolescence.[2] In *Lains v. American Family Mutual Insurance Co.*,[3] we learned that American Family makes depreciation decisions based on age without evidence of physical deterioration or obsolescence. The court held this practice was illegal because it did not follow the terms of the insurance contract.[4] Unfortunately, American Family's insistence on a confidentiality order prevents us from freely accessing the already-reviewed information that was produced in *Lains*. Were we able to reach those materials, the costs of discovery in the present case could be reduced, and we would be able to provide more specific examples of the types of documents we seek.

Plaintiffs contend that American Family's illegal "depreciation" practice is a manifestation of company initiatives to decrease claims payments and increase profits. This practice of illegal depreciation is the insurance equivalent of the "defeat device" made infamous by Volkswagen in its efforts to cheat governments and consumers. The taking of illegal "depreciation" defeats the right to replacement cost coverage, substituting a much inferior product. Because American Family does not explain the illegality of this practice to policyholders, and because American Family and other insurers routinely secure confidentiality

---

[1] Dkt. No. 10 (amended complaint).

[2] *Id.* ¶ 24.

[3] *Lains v. Am. Family Mut. Ins. Co.*, No. C14-1982-JCC, 2016 WL 4533075 (W.D. Wash. Feb. 9, 2016).

[4] *Id.*

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 2

orders to prevent sharing information from one bad-faith action to the next, the illegal practice

continues unabated. The result is that policyholders pay for replacement cost coverage on their

personal property, but they don't get it.

**B.      Subject Discovery Requests**

American Family claims to have produced 64,614 pages of documents. It has produced

these in an electronic format we have yet to fully configure and access. We cannot speak directly

to the contents of this production. From the parties' discovery conference, however, we

understand this production to consist mostly of the plaintiffs' individual claim files and some

additional documents from the *Lains* deposition exhibits. If this production includes corporate

policies bearing on claims payouts and depreciation, American Family has not called this

specifically to our attention. A copy of the letter that plaintiffs' counsel sent following the

parties' discovery conference is provided as Smart Decl. Ex. C.

American Family moves for a protective order on the following requests for production

(RFPs) and Rule 30(b)(6) deposition topics:

### *Internal Claims-Handling Standards*

- RFP 9: "Produce all policies, protocols, or procedures relating to deductions taken to reduce replacement cost value on any claim."

### *Targets, Measurements, and Incentives*

- RFP 10: "Produce all documents articulating, defining, discussing, or relating to all metrics employed by American Family for evaluation of the claims department, ALE Solutions and Enservio."

- RFP 11: "Produce all documents articulating, defining, discussing, or relating to all metrics relating to the savings achieved to American Family by taking depreciation or other deductions from personal property benefits."

- RFP 12: "Produce all documents articulating, defining, discussing, or relating to all metrics relating to savings achieved from not including shipping or tax when paying personal-property claims."

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 3

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

- RFP 14: "Produce all plans, policies, protocols, and procedures for saving money, cutting costs, improving results, or similar performance standards for the claims department, over the last 10 years."

- RFP 15: "Produce all strategies or other documents related to not 'overpaying' claims over the last 10 years."

- RFP 19: "Produce all executive summaries, committee meeting minutes, or memos and all board meeting minutes for all of the above topics."

- RFP 20: "Produce all documents regarding compensation, including bonuses, of any person working in or on claims at American Family."

- RFP 21: "Produce all documents regarding financial incentive programs available to executives of American Family."

- RFP 25: "Produce all documents regarding business plans for the claims department."

- RFP 27: "Produce all documents regarding American Family's profitability generally."

### *Existence, Location, and Nature of Documents*

- Topic 5: "The existence, location, and nature of all documents that identify or describe the financial performance of the claims department, third-party vendors, or American Family as a whole, relative to the adjustment of claims."

- Topic 6: "The existence, location, and nature of all documents that identify or describe the recovery of depreciation by American Family insured on personal-property claims."

- Topic 10: "The existence, location, and nature of all documents related to the savings achieved to American Family by taking depreciation or other deductions from personal property benefits."

- Topic 11: "The existence, location, and nature of all documents related to savings achieved from not including shipping or tax when paying personal-property claims."

- Topic 14: "The existence, location, and nature of all documents [related to] saving money, cutting costs, improving results, or similar performance standards for the claims department, over the last 10 years."

- Topic 15: "The existence, location, and nature of all documents related to not 'overpaying' claims over the last 10 years."

- Topic 18: "Executive summaries, committee meeting minutes, or memos and all board meeting minutes for all of the above-listed topics."

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## III. ARGUMENT

**A.** **American Family makes no showing regarding burden and therefore fails the test for obtaining a protective order.**

American Family has the burden to show good cause for a protective order.[5] This means it must support its claim for good cause through specific facts, not conclusory or stereotypical statements,[6] such as the conclusory statement in American Family's brief that the requests are not relevant or proportional to plaintiffs' claims.[7] Even when "good cause" is established, the court must still determine whether the producing party's burden of production and its privacy interests outweigh the right of the opposing party to obtain the information sought.[8] In this case, American Family makes no showing of the burden of complying with plaintiffs' discovery requests. It supplies no specific facts about the types of documents that exist, where they reside, and how much time or money it would take to produce them. We know from experience that companies like American Family have centralized systems for retention and collection of business records. The Court cannot rationally evaluate proportionality without concrete information about burden and, accordingly, should deny American Family's motion.

**B.** **The RFPs and deposition topics go directly to plaintiffs' theories for class-certification, liability, and remedies.**

Plaintiffs do not seek to propound discovery to burden American Family. Plaintiffs designed the requests to obtain evidence that helps (1) establish that American Family acts in bad faith through its adjustment of personal-property claims; (2) expose the root causes of the bad-

---

[5] Fed. R. Civ. P. 26(c)(1); *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011).

[6] *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998).

[7] Dkt. No. 32 at 9.

[8] *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1212-13 (9th Cir. 2002).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

faith practices; (3) flesh out the types of issues that are common to the proposed class; (4) permit

computation of plaintiffs' disgorgement remedy; (5) identify the practices that need to be

redressed through injunctive relief under the Consumer Protection Act (CPA)[9]; and (6) justify

the assessment of enhanced damages under the CPA and the Insurance Fair Conduct Act

(IFCA).[10] While stating in conclusory fashion that the requests are out of proportion to the needs

of the case, American Family ignores the reasons liberal discovery occurs in the first place: to

avoid prejudicial surprise and eliminate the "sporting theory of justice"[11]; to narrow the theories

of liability and defense[12]; to give parties full knowledge of the facts so they can prepare for

trial[13]; and to prevent delays at trial and conserve judicial resources.[14]

The requested discovery of American Family's corporate undertakings and practices is

relevant to class certification. We anticipate American Family will oppose class certification and

may argue that the adjustment of the plaintiffs' and proposed class members' individual

claims—including taking 100 percent depreciation of items that arguably do not depreciate—was

not the product of a programmatic directive by management to reduce claims payouts. Evidence

to the contrary that American Family's depreciation was the product of a broader effort to reduce

claims payouts regardless of the requirements of the applicable insurance policies would support

the conclusion that "a single injunction or declaratory judgment would provide relief to each

---

[9] RCW 19.86.090.

[10] RCW 48.30.015.

[11] *Brown Badgett, Inc. v. Jennings*, 842 F.2d 899, 902 (6th Cir. 1988).

[12] *O2 Micro Int'l v. Monolithic Power Sys.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

[13] *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 756 F.2d 230, 236 (2d Cir. 1985).

[14] *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973).

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 6

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

member of the class" under Fed. R. Civ. P. 23(b)(2), for example.[15] It is essential that plaintiffs be permitted the opportunity to investigate the existence of a "companywide" policy affecting depreciation to fairly determine class certification.[16] Plaintiffs expect that discovery will show an arbitrary program to reduce claims payouts not tied to policy language or policyholder rights. Such a program may not "relate to" depreciation per se—but trigger improper depreciation in the claims department. Too, it may not "relate to" the state of Washington, any other state, or any particular geography at all. Yet it would be highly probative both with respect to class certification and on the merits. The Court should not enter a protective order adopting arbitrary limitations when American Family has not demonstrated a particular need for such limitations, and the limitations would unreflectively exclude whole categories of very relevant documents.

### 1. The Court should overrule American Family's objections to discovery regarding targets, measurement, and incentives.

American Family objects to requests for information relating to metrics for evaluating the claims department and its vendors (RFP 10); metrics for measuring savings from depreciation and other deductions (RFPs 11, 12, Deposition Topics 10, 11); policies for saving money, cutting costs, improving results, or similar performance standards (RFP 14, Deposition Topic 14); strategies for not "overpaying" claims (RFP 15, Topic 15); the financial performance of the claims department, third-party vendors, or American Family relative to the adjustment of claims (Topic 5); the recovery of depreciation by insureds on personal-property claims (Topic 6); high-level executive documents relating to those topics (RFP 19, Deposition Topic 18); compensation and bonus programs for people working on insurance claims (RFP 20); financial incentive

---

[15] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

[16] *Id.* at 359.

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 7

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

programs available to executives at American Family (RFP 21); business plans for the claims department (RFP 25); and American Family's profitability generally (RFP 27). American Family first argues that the discovery requests go beyond documents that deal strictly with depreciation. Second, American Family objects that the requests seek information that involves states besides Washington.

According to *Tank v. State Farm Fire & Casualty Co.*,[17] an insurance company must give equal consideration to the insured's interests. Thanks in large part to recent scandals involving Wells Fargo and Volkswagen, it is undeniable that high-level corporate edicts, or financial targets issued from upper management, filter down into the practices that consumer-facing employees execute daily. This is the case even if high-level executives do not know the details of the middle-management or consumer-facing policies. Admittedly, one would not necessarily expect the highest level of leadership to be involved in the intricacies of policy drafting, policy interpretation, or claims handling. But the decisions established on a corporation-wide basis or on a claims-department-wide basis affect and largely control what happens (1) on the front lines of an insurance claim; (2) in the creation and iteration of business plans and strategies that apply to the claims department; (3) in the type of guidance and training that adjusters and their managers receive; and (4) in the retention and evaluation of third-party vendors who handle a massive number of American Family claims. And, of course, in some instances, a plan to employ devices to use the claims department as a profit center stems from the highest executive offices in the company.[18]

---

[17] *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 385-86, 715 P.2d 1133 (1986).

[18] *See, e.g.,* Berardinelli, *From Good Hands to Boxing Gloves: How Allstate Changed Casualty Insurance in America*, (Trial Guides LLC, 2008).

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 8

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

As plaintiffs' expert Elliott Flood explains:

> Also important to determining whether claim handling underpayments are the result of a strategic business plan to increase profits are high-level documents setting financial targets. These include establishing goals and benchmarks for claims payouts, claims expenses, number of claims handlers, number of claims handled per adjuster, and combined and loss ratios. Such documents, which may or may not specifically address a particular claims-handling practice, can demonstrate pressure on lower level managers and claims handlers to conduct their claims-handling duties in a manner divorced form the facts of the claim in order to meet established financial benchmarks. Such high-level documents could include board minutes, PowerPoint presentations, business plans, emails, and staff meetings.[19]

The Court should also order American Family to produce documents relating to incentives and bonuses (RFPs 20, 21). As the Washington court of appeals explained in *Miller v. Kenny*,[20] an insurer's bonus and incentive programs are "admissible to show that [the insurer], at relevant times, was rewarding its adjusters financially for clamping down on coverage and defense costs. The existence of these programs and the action by a claims analysis to conceal them supplied evidence of [the insurer's] motive to avoid settling …." In *Hover v. State Farm Mutual Automobile Insurance Co.*,[21] the Eastern District of Washington held that "notices of commendation, warning, discipline, and/or termination and incentive programs, bonus structures, and other similar information could help Plaintiff determine whether Defendant encourages its employees to undervalue claims and thereby compel litigation to recover actual amounts due." Other courts are in accord.[22]

---

[19] Flood Decl. ¶ 14.

[20] *Miller v. Kenny*, 180 Wn. App. 772, 813-14, 325 P.3d 278 (2014).

[21] *Hover v. State Farm Mut. Auto. Ins. Co.*, No. CV-13-05113-SMJ, 2014 WL 4239655, at *3 (E.D. Wash. Aug. 26, 2014).

[22] *Beyer v. Medico Ins. Grp.*, 266 F.R.D. 333, 336 (D.S.D. 2009); *Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 981 (N.D. Iowa 2006); *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 815 (Ky. 2004), *as modified* (Dec. 1, 2004).

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 9

As in other types of cases, "following the money" can lead to important evidence of

malfeasance as explained in *Good Hands to Boxing Gloves*:

> The Theory E philosophy underlying Allstate's distribution of the massive wealth
> generated by CCPR [Claims Core Redesign Process—the name ascribed to
> Allstate's changes to its claims handling procedures in the 1990's] would not be
> limited to Allstate's executives and employees. Allstate's senior management
> adopted CCPR expressly for Allstate's shareholders who would now become
> Allstate's only customer, and would reap billions in CCPR generated stock
> dividends in the process. Lost and forgotten amid all of McKinsey's Theory E
> plans to dramatically boost Allstate's net profits and its shareholder values, and
> the apparent rush by Allstate's executives to cash in on the impending Sears' IPO,
> was the one group of people for whose benefit Allstate was supposed to be
> writing insurance in the first place—Allstate's premium-paying policyholders.[23]

Although American Family has refused to produce this information, we have every

reason to believe that American Family executives face immense pressure to deliver financial

results. American Family recently disclosed significant improvements in financial

performance.[24] And a regulatory filing shows that in 2015 American Family executives made a

total of $15,188,308 *plus* $28,914,464 in executive bonuses.[25] Again, Flood explains the

significance of incentive and bonus information:

> Performance incentives for insurer employees show up in several different places.
> All insurers have an annual performance evaluation for every employee. Most
> have a separate bonus plan with associated documents. Finally, most have claims
> scorecards or similar documents that establish unit and sub-unit goals with regard
> to claim handling. I have reviewed these types of documents in many cases.
> Occasionally, I will find where claims-handling employees or their managers are
> given incentives to arbitrarily reduce claims payments without regard to proper
> claims handling. These documents, among others, can shed light on whether

---

[23] Berardinelli, *From Good Hands to Boxing Gloves: How Allstate Changed Casualty Insurance in America*, p. 53 (Trial Guides LLC, 2008).

[24] Smart Decl. Ex. A at 3.

[25] Smart Decl. Ex. B at 3.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

claims-handling underpayments are the result of a strategic business plan to increase profits.[26]

Placing the insurance company's financial interests above those of the policyholder is the classic definition of bad faith.[27] This type of information is discoverable.

Evidence relating to financial targets and metrics, and regarding financial incentives provided to American Family employees, is important not just to liability but to the remedies we seek on behalf of the proposed class. Financial information will help plaintiffs' experts determine the amount of profit to be disgorged. Identification of financial targets, metrics, business practices, and strategies that create conflicts of interest for adjusters and claims managers is essential if the Court is to fashion effective injunctive relief under the CPA.[28] For instance, in *Lains,* plaintiffs' expert Gerald Hartmann-former Vice President of Claims for Safeco Insurance stated:

> We do know, however, that this is done. Adjuster evaluations begin with the claims representative's self-evaluation. Mr. Marsh lauds himself that the "[d]epreciation applied to estimates regularly exceeds company goals." Marsh Dep. Ex. 76, Bates No. Lains_Confidential 10850. He gave himself a favorable review for "negotiation." *See id.* at 10847. He refers assignments to third-party vendors. *See id.* And, he strives to "maintain financial strength" (code for paying less) through these activities. *See id.* at 10849-50 (caps omitted).

> Rewarding adjusters for smaller payouts is highly inappropriate, encourages adjusters to violate Washington's "golden rule," creates irresolvable conflicts of interest, and falls below industry standards. An adjuster's job is to pay the correct amount to the insured, not to save money for the insurer. I know of no reputable insurance company in the modern age that rewards adjusters for saving money.

*　　*　　*

---

[26] Flood Decl. ¶ 13.

[27] *Tank*, 105 Wn.2d at 385-86.

[28] RCW 19.86.090.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

American Family's underpayment of insurance claims in the fashion outlined by this report is important for a number of reasons:

A.      The conduct is fraudulent, especially when carried out, as here, with what can best be described as an intentional effort to deprive the insureds of the financial benefits to which they are entitled. *See* Marsh Dep. at 79:6–11 (agreeing that it "[p]otentially" would constitute fraud "if the insurance company promised the insured something that the insurance company knew they weren't going to deliver on").

B.      The conduct demonstrates a wide ranging attempt to disadvantage not just the Lains family, but all of the consumers who have purchased similar American Family policies. For example, Mr. Marsh touted in his review that his "[d]epreciation applied to estimates regularly exceeds company goals." *See* Marsh Dep. Ex. 76, Bates No. 10850. The goals have not been produced, but Mr. Marsh—and other claims representatives—are apparently rewarded for their conduct. See Marsh Dep. 71:1–6 (Mr. Marsh received a bonus for 2014, even though two of his assignments resulted in lawsuits against American Family), 192:1–11 (Mr. Marsh received a bonus in 2014 and was not disciplined by American Family, even though the Court found that Mr. Marsh had made misrepresentations concerning the incidence of mold). Moreover, application of Enservio's formula guarantees that insureds will be cheated out of replacement cost on contents.

*      *      *

I have reviewed the Declaration of Neil Beaton, in which he states:

"In my opinion, it is highly probable that detailed financial documents exist relating to:

- Financial analyses, including income and expenses, based on product line

- Financial analyses, including income and expenses, based on initiatives

- The effect of hiring third party vendors on reduced payouts

- Financial performance of the third party vendors hired

- Analysis of loss experience by initiative and product line

- The profitability and/or cost saving for the company as a result of engaging third party vendors

- In one fashion or another the above would include financial analysis of net savings due to depreciation taken both on structure and contents losses

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In my experience, these financial analyses would be used by senior managers, financial analysts, and other executives of the insurance company for the purpose of establishing budgets, targets and goals. "

Decl. of Neil Beaton ¶ 6. I agree with Mr. Beaton's analysis. These documents will exist in one form or another. Insurance executives make detailed analyses of the dollars spent and saved by an insurer's initiatives. The idea that senior executives in charge of these initiatives, or in charge of the claims department, have no documents describing the dollars saved and spent in response to initiatives designed to create savings is incomprehensible. The claims department (or other departments in charge of the cost saving initiatives—such as hiring third party vendors—always have analyses showing the return on investment (ROI) of their efforts.[29]

This type of information is also critically important for plaintiffs' claim for enhanced damages under IFCA and the CPA. Upon a finding of a violation of IFCA, a jury is empowered to enhance a damages award up to three times the actual damages.[30] In a class-action case such as this, the potential trebled amount could be many millions of dollars. Enhanced damages under IFCA are sometimes challenged by insurers for alleged unconstitutionality. The "most important guidepost" that courts use "in assessing the reasonableness of an award of punitive damages is the reprehensibility of the defendant's conduct."[31] By definition, a policyholder is a vulnerable target under Washington law.[32] If there is evidence that American Family pushed financial targets in a manner that led to the unlawful practices in issue here and that disadvantaged vulnerable policyholders, then plaintiffs should be allowed to discover the evidence and present their best case to the jury and to the Court as evidence of reprehensibility.

---

[29] Smart Decl. Ex. D, Report of Gerald Hartmann, ¶¶ 98, 99, 115A, 115B, 116, Dkt. Nos. 141, 141-1, *Lains v. Am. Family Mut. Ins. Co.*, No. C14-1982-JCC.

[30] RCW 48.30.015(1), (2).

[31] *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2015 WL 1188533, at *23-25 (W.D. Wash. Mar. 16, 2015).

[32] *Id.* at *24.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## 2. The Court should overrule American Family's objection to producing information from outside Washington—including internal claims-handling standards, targets, measurements, and incentives.

American Family argues that all of the RFPs and deposition topics identified in its motion are overbroad in calling for information from outside Washington. It argues, for example, that requests "not limited to the handling of claims in the State of Washington are not relevant."[33] We know that a simple internet search reveals that American Family reports its financial results nationally,[34] which includes Washington as one of many states in American Family's territory. We also know that American Family handles claims interstate; in *Lains*, for example, the claim in Enumclaw, Washington, was handled by an adjuster from another state. The argument that out-of-Washington information is undiscoverable is divorced from the reality of how American Family actually adjusts claims. Limiting discovery in the manner proposed by American Family would likely deprive plaintiffs of a majority of the relevant documents needed to pursue their claims—which may be American Family's intent in bringing this motion.

Because American Family adjusters are expected to investigate and evaluate claims from several different states, all of the training and standards that apply to such adjusters should be produced, unbounded by geography. To segregate "Washington documents" from documents that would apply to claims in other states but handled by the same adjusters is artificial. In addition, we have every reason to believe American Family employs the same "actual cash value" policy language in a significant number of other states, as Flood explains.[35] We know, for

---

[33] Dkt. No. 32 at 12:5-6.

[34] Smart Decl. Ex. A at 3.

[35] Flood Decl. ¶¶ 4-5.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

example, that American Family uses the same contract language in Missouri,[36] and American

Family can easily determine the other states in which it uses the provision.[37]

American Family should produce all documents that relate to application and

interpretation of the "actual cash value" provision, regardless of whether it is a document that

discusses the subject in the context of the specific Washington form or a form in another state.

The argument that American Family's usage of terminology outside Washington's borders has

no relevance within the state is unsupported by any logic. The contrary conclusion is much more

reasonable. For all we know, American Family could have implemented the provision in another

state first, created a large number of documents relating to its intentions in drafting the provision

at the time, and then later exported the provision to states like Washington without creating a

new paper trail. Plaintiffs are entitled to discover *all* extrinsic evidence relating to the policy

provision or else will be handicapped in arguing the merits of this case, which focuses in large

part on the interpretation of the "actual cash value" provision. Courts rely on extrinsic evidence

of intent to resolve ambiguities in insurance policies.[38] *Berg v. Hudesman*[39] holds that a court

interpreting a contract considers the surrounding circumstances—including the subject matter of

the contract and the parties' subsequent conduct. In other words, evidence surrounding American

Family's drafting and implementation of the provision—including American Family's internal

guidelines, training, and standards for taking depreciation on personal property—is eminently

relevant and discoverable, regardless of where it resides.

---

[36] *Riggins v. Am. Fam. Mut. Ins. Co.*, 106 F. Supp. 3d 103, 1040-41 (W.D. Mo. 2015).

[37] Flood Decl. ¶ 5.

[38] *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171–72, 110 P.3d 733 (2005).

[39] 115 Wn.2d 657, 668, 801 P.2d 222 (1990).

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Documents within American Family relating to deprecation are reasonably likely to bear on the Court's evaluation of this case for this reason, even if the documents do not specifically "relate to" Washington (to take one example of what is, in context, an arbitrary limitation requested by American Family). For example, in *Moeller v. Farmers Insurance Co.*, a class action, the court considered what "an average consumer would expect" in assessing the benefits afforded by the policy language.[40] In *Holden v. Farmers Insurance Co.*, another class action, the plaintiff class asserted that insurance policy language covered reimbursement of sales tax.[41] Discovery showed that the insurer used "a variety of methods" to calculate reimbursement under the same policy language, sometimes with sales tax and sometimes without.[42] The court held that the insurer's practices were "critical" to the analysis and relied on this evidence in determining that the language was ambiguous and therefore had to be construed in favor of coverage.[43] Here too, American Family documents on depreciation are likely to show the reasonable expectations of consumers, American Family's own practices, and the potential for more than one reasonable interpretation of the "actual cash value" provisions of the plaintiffs' policies—in all cases, regardless of whether such documents specifically "relate to" Washington, another geography, or no geography.

The duty of good faith is not a Washington-specific requirement; it applies across the country. As a national insurance treatise, *Couch on Insurance*, explains, good-faith conduct "may be characterized by faithfulness to one's express obligations, making the decision to settle or not

---

[40] 173 Wn.2d 264, 276, 267 P.3d 998 (2011).

[41] 169 Wn.2d 750, 754, 239 P.3d 344 (2010).

[42] *Id.* at 754-55.

[43] *Id.* at 757, 759-60.

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 16

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

after an equal consideration of the insured's interests and based upon adequate information, and performing these actions honestly, intelligently, and objectively."[44] Many states have also adopted a version of the Model Unfair Claims Settlement Practices Act published by the National Association of Insurance Commissioners (NAIC), including Washington and American Family's home state of Wisconsin.[45] American Family's guidelines for compliance with the NAIC model act are relevant—whether they address the model act generally, the Washington version, or any other state's version—because they are evidence of how American Family views and effectuates its good-faith and fair-claims-handling obligations to policyholders.

### 3. The Court should order a Rule 30(b)(6) deposition to go forward relating to the nature, existence, and location of documents.

In an effort to understand American Family's concerns and expedite the discovery process, plaintiffs raised the issue of conducting a Rule 30(b)(6) deposition into the nature, existence, and location of the documents in question. American Family refused, effectively forcing motions on these issues without the type of information American Family is required to file to obtain a protective order. Regardless, it is still the case that the discovery process would be more efficient for everyone if plaintiffs were permitted to take this type of deposition as soon as possible. We ask the Court to enter such an order.

## IV. CONCLUSION

Plaintiffs request that the Court deny the motion for a protective order in its entirety.

DATED this 11th day of January, 2017.

---

[44] 14 *Couch on Ins.* § 198:6 (3d ed. Dec. 2016 Update) (available on Westlaw).

[45] Unfair Claims Settlement Practices Act at 7-10 (Jan. 1997), *available at* <http://www.naic.org/store/free/MDL-900.pdf>.

**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

| | |
|---|---|
| KELLER ROHRBACK L.L.P. | GORDON TILDEN THOMAS & CORDELL |
| By: s/ *William C. Smart* | By: s/ *William C. Smart for Jeffrey I. Tilden* |
| William C. Smart, WSBA #8192 | Jeffrey I. Tilden, WSBA #12219 |
| Isaac Ruiz, WSBA #35237 | Mark Wilner, WSBA #31550 |
| Ian S. Birk, WSBA #31431 | Gordon Tilden Thomas & Cordell |
| Kayti M. Knudsen, WSBA #41075 | 1001 Fourth Avenue, Suite 4000 |
| Keller Rohrback L.L.P. | Seattle, Washington 98154 |
| 1201 Third Avenue, Suite 3200 | Telephone: (206) 467-6477 |
| Seattle, Washington 98101 | Fax: (206) 467-6292 |
| Telephone: (206) 623-1900 | jtilden@gordontilden.com |
| Fax: (206) 623-3384 | mwilner@gordontilden.com |
| wsmart@kellerrohrback.com | Attorneys for Plaintiffs |
| iruiz@kellerrohrback.com | |
| ibirk@kellerrohrback.com | |
| kknudsen@kellerrohrback.com | |
| Attorneys for Plaintiffs | |

PLAINTIFFS' RESPONSE TO AMERICAN FAMILY'S MOTION
FOR PROTECTIVE ORDER
(3:16-cv-05576-BHS) - 18

# CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Mr. Rory W. Leid
Mr. Christopher Roslaniec
Ms. Kimberly Larson Rider
Cole Wathen Leid & Hall, P.C.
303 Battery Street
Seattle, WA 98121
rleid@clwl.net
croslaniec@cwlhlaw.com
krider@cwlhlaw.com

Mr. Matthew B. Harris
Faegre Baker Daniels LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
matthew.harris@faegrebd.com,

Mr. Todd Walker
Mr. Michael McCarthy
Faegre Baker Daniels LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203
todd.walker@FaegreBD.com
michael.mccarthy@faegrebd.com

By: s/ Shannon McKeon
Shannon McKeon
Legal Assistant
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900

KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384